IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OTIS WILKERSON,<br>      Plaintiff, | :<br>:<br>: |
| v. | :     CIVIL ACTION NO. 24-CV-5958 |
| GINA CLARK, *et al.*,<br>      Defendants. | :<br>:<br>: |

**MEMORANDUM**

**COSTELLO, J.**                                                                                     **NOVEMBER 15, 2024**

Otis Wilkerson, a prisoner incarcerated at SCI Chester, filed this civil rights action naming several employees of CCS/Wellpath, the medical services contractor at SCI Chester, and several SCI Chester employees. He seeks injunctive and declaratory relief concerning his medical treatment. Wilkerson also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Wilkerson leave to proceed *in forma pauperis* and dismiss the Complaint.

**I.**        **FACTUAL ALLEGATIONS**[1]

Wilkerson has suffered from back pain since 2018. (Compl. at 5.) Since June 6, 2023, he has experienced an increase in pain and has been prescribed treatment that he contends does nothing to help. (*Id.*) He suffers from arthritis "combined with numerous diagnoses which doesn't explain the pain" in his back and, recently, in his chest. (*Id.*) He has been provided with

---

[1] Wilkerson used the form complaint available to unrepresented litigants to file his claims and included an additional typewritten Complaint. (ECF No. 3.) The Court considers the entire submission to constitute the Complaint, to which the Court adopts the sequential pagination assigned by the CM/ECF docketing system. The factual allegations set forth in this Memorandum are taken from Complaint. Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up.

physical therapy, x-rays, EKGs, lab work, Tylenol, naproxen, celbrex, robaxin, muscle relaxers, Flexiril, Icy Hot, and Refalen. (*Id*. at 5, 14.) He has requested an MRI by an outside doctor for a second opinion but was told that an "MRI is not required, despite [his] pain and suffering and plea for resolution." (*Id*.)

Wilkerson has been evaluated numerous times during sick calls by Defendants Dr. Little and PA Nicholson and has been informed that he has scapular/thoracic arthritis. (*Id*. at 14.) He has consulted with Defendants Ms. Favaloro, the Correctional Health Care Administrator ("CHCA") at SCI Chester, and her assistant Defendant Ms. Russo regarding his treatment and inquired with them about alternative treatments. (*Id*.) In June 2023, when he complained about chest pain radiating from his back into his chest, he was taken to Crozier Hospital where x-rays, lab tests, urinalysis and an EKG were performed. (*Id*. at 15.) While unclear, Wilkerson asserts that his "complaint of chest pain is hidden under the guise of a good EKG examination, and no sign of potential heart attack, despite [his] plea for resolution [and] MRI and/or appropriate testing." (*Id*.)

On September 4, 2024, Wilkerson had a "medical emergency" where medical staff responded to his housing unit due to his complaint of chest and back pain. (*Id*.) An EKG was conducted to see if he had suffered a heart attack, even though he told Defendant Nicholson the paid was due to his back condition. Nicholson responded "that's possible . . . but you could also have inflammation in between your rib cage." (*Id*.) Wilkerson asserts that "this is a routine practice and pattern of behavior to deny and/or delay access to appropriate qualified health care personnel." (*Id*.)

2

Wilkerson asserts claims against SCI Superintendent Gina Clark,[2] Favaloro, Russo, Dr. Little, and PA Nicholson for deliberate indifference to his serious medical needs.[3]  (*Id*. at 16.) He seeks an injunction ordering the Defendants to send him out of the prison for an examination, a second opinion, and an MRI or other appropriate test to determine the source of his pain, and a declaration that his rights have been violated.[4]  (*Id*. at 5.)

## II.  STANDARD OF REVIEW

The Court grants Wilkerson leave to proceed *in forma pauperis*.[5]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see*

---

[2] The only allegation regarding Clark is that, as Superintendent, she is responsible for the operations at SCI Chester and the care of the inmates.  (Compl. at 13.)

[3] Wilkerson included "SCI Chester," "DOC Bureau of Health Care Services," and "CCS/Wellpath" in the caption of the form he used as part of his Complaint.  He did not include "SCI Chester" or "DOC Bureau of Health Care Services in the caption of the typewritten part of the Complaint, and listed "CCS/Wellpath" there with the notation that he was naming Dr. Little and PA Nicholson "by way of CCS/Wellpath."  He did not include any of the three in the list of defendants in either portion of his submission and has not included any substantive allegations about them.  The Court understands Wilkerson to have used those terms as a means of identifying other named Defendants.

[4] Declaratory relief is unavailable to adjudicate past conduct, so Wilkerson's request for this declaratory relief is improper.  *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").  A declaratory judgment is also not "meant simply to proclaim that one party is liable to another."  *Corliss*, 200 F. App'x at 84; *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

[5] Because Wilkerson is a prisoner, he must still pay the $350 filing fee for this case in installments as required by the Prison Litigation Reform Act.

3

*Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Wilkerson is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

**III.    DISCUSSION**

Wilkerson asserts constitutional claims. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995).

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is

4

not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Not every complaint of inadequate prison medical care rises to the level of deliberate indifference.  *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (*per curiam*).  "Where a prisoner is receiving some amount of medical treatment, [courts] presume that the treatment is adequate absent evidence that it violates professional standards of care."  *Id*. (affirming dismissal of deliberate indifference claims on screening) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990)); *see also Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*) ("Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners.").  Mere disagreement regarding proper medical treatment is insufficient to establish a constitutional violation.  *See*

*Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017); *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). "If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill*, 372 F.3d at 236; *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff.").

Assuming for purposes of statutory screening that Wilkerson's back condition is a serious medical need, he fails to allege plausible deliberate indifference claims against Superintendent Clark, CHCA Ms. Favaloro, and Assistant CHCA Ms. Russo. His claim against Clark, based only on her role as the Superintendent of SCI Chester, fails to allege that she was personally involved in an alleged denial of medical treatment. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) (noting that generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or agency are insufficient to allege personal involvement in an underlying constitutional violation). He alleges only that he consulted with Favaloro and Russo regarding his treatment and inquired with them about alternative treatments but does not allege that they refused, delayed, or denied him medical care. Because non-medical provider Defendants can rely upon medical providers to use appropriate judgment about care and

treatment options, the deliberate indifference claims against Clark, Favaloro, and Russo are not plausible.

Wilkerson's claims against Dr. Little and PA Nicholson are also not plausible. He asserts that Little and Nicholson are aware that he has scapular/thoracic arthritis. While he alleges in conclusory terms only that there "is a routine practice and pattern of behavior to deny and/or delay access to appropriate qualified health care personnel" (Compl. at 15) – an allegation that cannot itself be grounds for a plausible claim, *Iqbal*, 556 U.S. at 678 – Wilkerson does not allege plausibly that either Little or Nicholson were deliberately indifferent to his medical needs. He alleges only that he has been unable to get an MRI test and a second opinion, but concedes he has received numerous other medical services to diagnose and treat his back condition including an outside hospital visit, x-rays, lab tests, urinalysis, physical therapy, prescription medications, and non-prescription medications. Wilkerson's inability to receive an MRI test under these circumstances does not rise to the level of deliberate indifference. *See Bearam v. Wigen*, 542 F. App'x 91, 93 (3d Cir. 2013) (holding that allegation that prison official refused permission for an MRI and other tests when other tests and services were provided "do not rise to the level of deliberate indifference, and are at best an allegation of medical malpractice"); *Oliver v. Pennsylvania Dep't of Corr.*, No. 13-5321, 2014 WL 80725, at *7 (E.D. Pa. Jan. 8, 2014) (holding that allegations that prisoner was denied x-rays and an MRI "that he wanted" failed to support a plausible deliberate indifference claim based on a refusal to provide care where prisoner alleged that the defendant doctors did treat him for his complaints and he "simply disagrees with their professional medical decisions"); *Brown v. Prison Health Servs.*, No. 12-3578, 2013 WL 6139646, at *6 (E.D. Pa. Nov. 20, 2013) ("The fact that plaintiff's choice of diagnostic test was not honored does not amount to deliberate indifference on the part of the

Medical Defendants.") (citing *Montilla v. Prison Health Servs., Inc.*, 457 F. App'x 212, 214 (3d Cir. 2012) (*per curiam*) (affirming the dismissal of a claim that prison medical officials' decision to treat hip condition with physical therapy rather than hip-replacement surgery did not violate the Eighth Amendment); *Dickerson v. SCI Graterford*, 453 F. App'x 134, 136 (3d Cir. 2011) (*per curiam*) (dissatisfaction with prescribed course of treatment does not establish an Eighth Amendment violation); *see also Williams v. Ferdarko*, No. 17-313, 2018 WL 3648280, at *1 (W.D. Pa. Aug. 1, 2018), *aff'd*, 807 F. App'x 177 (3d Cir. 2020) (holding that prisoner's subjective disagreement with the opinions of the treating medical professionals failed to establish a likelihood of success on the merits of his Eighth Amendment claim or irreparable harm sufficient to support his request for injunctive relief that he receive an MRI where the test was refused because it is not medically indicated). *But see Montgomery v. Aparatis Dist. Co.*, No. 13-5382, 2014 WL 1340033, at *7 (D.N.J. Apr. 1, 2014) (holding that the refusal to provide an MRI as follow-up evaluative care for prisoner's continuing and escalating pain and numbness from a diagnosed pinched nerve injury stated a plausible claim where the MRI procedure was expressly prescribed by two orthopedic specialists). Because Wilkerson received treatment for his condition and his allegations at best show only dissatisfaction with the Defendants' treatment choices, his claim of deliberate indifference is not plausible and will be dismissed.

## IV.  CONCLUSION

For the reasons stated, the Court will dismiss Wilkerson's Complaint. Because an attempt to amend these claims would prove futile, the dismissal will be with prejudice. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that complaints dismissed under the PLRA should be with leave to amend "unless amendment would be inequitable or

futile"). An appropriate Order will be entered.

**BY THE COURT:**

_____
**MARY KAY COSTELLO, J.**